245 P.3d 488

KEE SUN KIM, Claimant/Appellant–
Appellee, Cross–Appellee,

v.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, Respondent/Appellee–
Appellant, Cross–Appellee,

and

J.P. Schmidt, Insurance Commissioner,
Department of Commerce and Consum-
er Affairs, Appellee–Appellee, Cross–Ap-
pellant.

No. 28315.

Intermediate Court of Appeals of Hawai‘i.

Dec. 23, 2010.

As Corrected Jan. 20, 2011.

Melvin Y. Agena (Law Offices of Melvin Y.
Agena) (Andrew A. Agard (The Andrew A.
Agard Law Office) with him on the brief), for
Claimant/Appellant–Appellee, Cross–Appel-
lee.

James H. Monma (Randall Y.S. Chung
with him on the brief) (Matsui Chung), for
Respondent/Appellee–Appellant, Cross–Ap-
pellee.

David A. Webber (Deborah Day Emerson
with him on the brief), Deputies Attorney
General, for Appellee–Appellee/Cross–Appel-
lant.

NAKAMURA, Chief Judge, FOLEY, and
FUJISE, JJ.

Opinion of the Court by NAKAMURA,
C.J.

Kee Sun Kim (Kim) was injured in a motor
vehicle accident in which her vehicle was
rear-ended by another vehicle. At the time
of the accident, Kim's vehicle was insured by
Liberty Mutual Fire Insurance Company
(Liberty Mutual). Liberty Mutual paid for
medical treatments incurred by Kim during
the first three and a half months following
the accident, including acupuncture treat-
ments. Liberty Mutual then refused to pay
a claim by Kim's medical provider for acu-
puncture treatments that Kim received more
than three and a half months after the acci-
dent on the ground that such treatments
were no longer warranted.

Kim filed with the Insurance Commission-
er, Department of Commerce and Consumer
Affairs, a request for review of Liberty Mu-

tual's refusal to pay Kim's medical provider for the acupuncture treatments. In *Wilson v. AIG Hawaii Ins. Co.*, 89 Hawai'i 45, 968 P.2d 647 (1998), the Hawai'i Supreme Court previously held that Wilson, an insured claimant, who on behalf of her medical provider had sued the insurer to enforce the provider's claim for unpaid medical expenses, was not a real party in interest who could bring such a suit. *Id.* at 47–51, 968 P.2d at 649–53. Relying on *Wilson v. AIG*, the Insurance Commissioner determined that Kim was not a real party in interest and could not pursue her administrative action against Liberty Mutual.

Kim appealed the Insurance Commissioner's decision to the Circuit Court of the First Circuit (circuit court),[1] which overturned the Insurance Commissioner's decision. The circuit court concluded that the Hawai'i Legislature had overruled *Wilson v. AIG* by virtue of the Legislature's 2006 enactment of Act 198, 2006 Haw. Sess. Laws Act 198, at 840–41 (Act 198), and the legislative history accompanying Act 198, and that Kim qualified as a real party in interest.

In this appeal, we must determine the impact that Act 198 and its legislative history have on *Wilson v. AIG*'s real-party-in-interest analysis. We conclude that the Legislature, through Act 198 and its accompanying legislative history, has clarified its intent and the nature of an insured claimant's interest in enforcing his or her medical provider's claim for payment, such that Kim qualifies as a real party in interest. Accordingly, we hold that Kim is a real party in interest and is entitled to pursue her administrative ac-

tion which challenged Liberty Mutual's refusal to pay Kim's medical provider for the acupuncture treatments provided to Kim.

## I.

After Kim's involvement in the motor vehicle accident, her treating physicians prescribed treatments that included acupuncture therapy. About a week after the accident, Kim began receiving acupuncture treatments from Dr. Chai's Health Center Inc. (Health Center). After initially paying the Health Center's billings for such treatments, Liberty Mutual denied a claim submitted by the Health Center for several acupuncture treatments provided to Kim more than three and a half months after the accident. Liberty Mutual explained that its denial of the Health Center's claim was based on a medical records review that was conducted by Clifford K.H. Lau, M.D., approximately three and a half months after the accident. Dr. Lau opined that, as of the date of his records review, "passive modalities" such as acupuncture and massage were no longer warranted. Liberty Mutual had not sought mutual agreement from Kim prior to selecting Dr. Lau to conduct the records review.

Pursuant to Hawaii Revised Statutes (HRS) § 431:10C:212 (2005),[2] Kim filed a request for an administrative hearing with the Insurance Commissioner to seek review of Liberty Mutual's refusal to pay the billing statement submitted by the Health Center. Both Kim and Liberty Mutual filed motions for summary judgment. Citing *Wilson v. AIG*, a hearings officer recommended that the Insurance Commissioner grant Liberty

---

**1.** The Honorable Eden Elizabeth Hifo presided.

**2.** HRS § 431:10C–212 provides:

(a) If a claimant or provider of services objects to the denial of benefits by an insurer or self-insurer pursuant to section 431:10C–304(3)(B) and desires an administrative hearing thereupon, the claimant or provider of services shall file with the commissioner, within sixty days after the date of denial of the claim, the following:

(1) Two copies of the denial;
(2) A written request for review; and
(3) A written statement setting forth specific reasons for the objections.

(b) The commissioner has jurisdiction to review any denial of personal injury protection benefits.

(c) The commissioner shall:

(1) Conduct a hearing in conformity with chapter 91 to review the denial of benefits;
(2) Have all the powers to conduct a hearing as set forth in section 92–16; and
(3) Affirm the denial or reject the denial and order the payment of benefits as the facts may warrant, after granting an opportunity for hearing to the insurer and claimant.

(d) The commissioner may assess the cost of the hearing upon either or both of the parties.

(e) Either party may appeal the final order of the commissioner in the manner provided for by chapter 91.

Mutual's motion for summary judgment. The hearings officer concluded that: 1) Kim was not a real party in interest who could pursue an action against Liberty Mutual for payment of Kim's medical provider's billing statement; and 2) Liberty Mutual did not need to obtain mutual consent from Kim before selecting Dr. Lau to conduct a records review under HRS § 431:10C–308.5 (2005 & Supp.2009).[3] The Insurance Commissioner issued a Final Order which adopted the hearings officer's recommended decision and granted Liberty Mutual's motion for summary judgment.

Kim appealed the Insurance Commissioner's Final Order to the circuit court. The circuit court "reversed" the Insurance Commissioner's rulings and remanded the case to the Insurance Commissioner pursuant to the Judgment the circuit court issued on November 17, 2006. The circuit court determined that (1) Kim has standing and is a real party in interest who could challenge Liberty Mutual's denial of no-fault or personal injury protection (PIP) benefits,[4] namely, Liberty Mutual's denial of payments requested by Kim's medical provider for treatments rendered; and (2) under HRS § 431:10C–308.5(b), Liberty Mutual was required to obtain the mutual consent of Kim before having a doctor conduct a records review of Kim's medical records.

## II.

Liberty Mutual appealed and the Insurance Commissioner cross-appealed to this court from the circuit court's Judgment. Liberty Mutual and the Insurance Commissioner are aligned together and assert many of the same arguments in attacking the circuit court's decision. Thus, this appeal pits Liberty Mutual and the Insurance Commissioner against Kim.

On appeal, Liberty Mutual and the Insurance Commissioner argue that the circuit court erred by ruling that (1) Kim is a real party in interest who could challenge Liberty Mutual's denial of the PIP benefits requested by Kim's medical provider for treatments rendered; and (2) mutual consent between Kim and Liberty Mutual was required in order for Liberty Mutual to have a doctor conduct a records review under HRS § 431:10C–308.5(b).

■ With respect to the second issue, while this appeal was pending, the Hawai'i Supreme Court decided *Gillan v. Government Employees Ins. Co.*, 119 Hawai'i 109, 194 P.3d 1071 (2008). *Gillan* resolves the second issue through its holding that a records review does not constitute an "independent medical examination" within the meaning of HRS § 431:10C–308.5(b) and, therefore, an insurer is not required to obtain the insured claimant's mutual consent to conduct a record review. *Id.* at 111, 123, 194 P.3d at 1073, 1085. In light of *Gillan*, the circuit court erred in ruling that Liberty Mutual was required to obtain the mutu-

3. HRS § 431:10C–308.5(b), the subsection of HRS § 431:10C–308.5 relevant to the "mutual consent" issue, provides in pertinent part:

> (b) The charges and frequency of treatment for services specified in section 431:10C–103.5(a) ... shall not exceed the charges and frequency of treatment permissible under the workers' compensation supplemental medical fee schedule. *Charges for independent medical examinations, including record reviews,* physical examinations, history taking, and reports, to be conducted by a licensed Hawaii provider unless the insured consents to an out-of-state provider, shall not exceed the charges permissible under the appropriate codes in the workers' compensation supplemental medical fee schedule.... *The independent medical examiner shall be selected by mutual agreement between the insurer and claimant;* provided that if no agreement is reached, the selection may be submitted to the commissioner, arbitration or circuit court. The independent medical ex-

aminer shall be of the same specialty as the provider whose treatment is being reviewed, unless otherwise agreed by the insurer and claimant.... The commissioner may adopt administrative rules relating to fees or frequency of treatment for injuries covered by personal injury protection benefits. If adopted, these administrative rules shall prevail to the extent that they are inconsistent with the workers' compensation supplemental medical fee schedule.

(Emphases added.)

4. In 1997, the Hawai'i Legislature substituted the term "personal injury protection benefits" for the term "no-fault benefits." *Iaea v. TIG Ins. Co.*, 104 Hawai'i 375, 378 n. 3, 90 P.3d 267, 270 n. 3 (App.2004); 1997 Haw. Sess. Laws Act 251, §§ 2, 34, 40–42 at 514, 533, 538–41. We will use these terms interchangeably in this opinion.

al consent of Kim before it could hire Dr. Lau to conduct a records review. We now turn to the first issue—whether the circuit court properly concluded that Kim is a real party in interest.

### III.

Liberty Mutual and the Insurance Commissioner argue that Kim is not a real party in interest and cannot challenge Liberty Mutual's refusal to pay the billing statement submitted by the Health Center for acupuncture treatments provided to Kim. They rely on the Hawai'i Supreme Court's 1998 decision in *Wilson v. AIG*.

### A.

In *Wilson v. AIG*, the Hawai'i Supreme Court held that an insured claimant who brought suit to obtain payments from her no-fault insurer for her physician's unpaid bill was not a "real party in interest" under District Court Rules of Civil Procedure (DCRCP) Rule 17(a).[5] *Wilson v. AIG*, 89 Hawai'i at 47–51, 968 P.2d at 649–53. Wilson was injured while she was a passenger in a vehicle insured under a no-fault policy. *Id.* at 45, 968 P.2d at 647. She was diagnosed as suffering from a herniated disc and under-

went surgery performed by Dr. Bernard Robinson, M.D. *Id.* The insurer refused to pay Dr. Robinson's bill for the surgery based upon a peer review organization report which concluded that the treatment and services provided by Dr. Robinson were not appropriate or reasonable. *Id.* at 45–46, 968 P.2d at 647–48.

Wilson sued the insurer in district court pursuant to HRS § 431:10C–308.6(f) (1993),[6] which provided in relevant part that "[a]ny *insured* or provider may . . . seek an administrative hearing, arbitration, or *court review* of a denial of no-fault benefits based, in whole or in part, upon a peer review organization determination." *Id.* at 46; 968 P.2d at 648. Wilson sought to require the insurer to pay for the surgery. *Id.*

Reversing the opinion issued by the Intermediate Court of Appeals (ICA), the Hawai'i Supreme Court held that Wilson was not a real party in interest and thus could not file suit to obtain a judgment for monies owed to Dr. Robinson for medical services rendered. *Id.* at 47–51, 968 P.2d at 649–53. The supreme court noted that according to the ICA, DCRCP Rule 17(a) provides that a person qualifies as a real party in interest when a statute gives him or her the right to bring

---

**5.** DCRCP Rule 17(a) (1996) now provides, as it did at the time *Wilson v. AIG* was decided, in relevant part as follows:

 **(a) Real Party in Interest.** *Every action shall be prosecuted in the name of the real party in interest; except that (1) . . . a party authorized by statute may sue in such party's own name without joining with such party the party for whose benefit the action is brought, and (2) this requirement shall not be mandatory when a subrogee is a real party in interest.* No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

(*Emphasis added.*)

 The Hawai'i Administrative Rules (HAR) applicable to hearings before the Insurance Commissioner do not include a specific real-party-in-interest rule that corresponds to DCRCP Rule 17(a). HAR § 16–201–1 (1990), however, pro-

vides that when the rules applicable to such hearings are "silent on a matter, the [Insurance Commissioner] or hearings officer may refer to the Hawaii Rules of Civil Procedure [(HRCP)] for guidance." The real-party-in-interest provision set forth in HRCP Rule 17(a) is in material respects the same as DCRCP Rule 17(a). HRCP Rule 17(a) provides in relevant part as follows:

 **(a) Real Party in Interest.** *Every action shall be prosecuted in the name of the real party in interest. . . . [A] party authorized by statute may sue in its own name without joining with it the party for whose benefit the action is brought.* No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

(*Emphasis added.*)

**6.** HRS § 431:10C–308.6 (1993), the provision in issue in *Wilson v. AIG*, was repealed in 1997. 1997 Haw. Sess. Laws Act 251, § 59 at 551.

suit. *Id.* at 48, 968 P.2d at 650. The supreme court, however, imposed a further requirement that to qualify as a real party in interest, a "party must also have a legal right under substantive law to enforce the claim in question." *Id.*

The supreme court acknowledged that "HRS § 431:10C[-]308.6(f) expressly allows 'any insured' the right to seek court review of a ... denial of no-fault benefits [based upon a peer review organization determination]." *Id.* Accordingly, Wilson satisfied the requirement of DCRCP Rule 17(a) that she qualify as a party authorized by statute to sue. The supreme court stated that "[t]he question thus becomes whether the substantive law permits Wilson to enforce her claim against [the insurer]." *Id.* The supreme court noted that Wilson admitted that "she is 'effectively bringing the action for the benefit of her primary treating physician.'" *Id.* The supreme court concluded that "[a]s expressed, Wilson's claim is not a claim for relief that she is entitled to enforce against [the insurer]." *Id.*

The supreme court reached this conclusion by analyzing several provisions of the no-fault law. The supreme court found that the only benefit payments that an insurer was required to pay directly to an injured insured under the no-fault law were for wage losses and other necessary non-medical expenses incurred as a result of the injury. *Id.* at 48–49, 968 P.2d at 650–51. On the other hand, the no-fault law required that an insurer make payment of the insured's medical expenses directly to the medical provider. *Id.* at 49, 968 P.2d at 651. It also prohibited a medical provider from billing or attempting to collect from the insured the cost of medical services rendered. *Id.*

The supreme court stated:

Viewing [the provisions of the no-fault law] in *pari materia*, it is clear that the no-fault law does not allow an insured to enforce a claim for unpaid medical expenses against an insurer on behalf of his or her provider. The no-fault statutory scheme strongly suggests that the provider, not the insured, is entitled to pursue payment from the insurer for the cost of unreimbursed medical services to the insured. Accordingly, we hold that Wilson is not a real party in interest with respect to her claim against [the insurer] for no-fault benefits to satisfy her provider's unpaid bill.

*Id.* at 49–50, 968 P.2d at 651–52 (footnote and citation omitted).

The supreme court then went on to address two reasons the ICA had relied upon in reaching the contrary conclusion that Wilson was a real party in interest. The supreme court addressed the ICA's first reason as follows:

The ICA, nevertheless, concluded that Wilson was a real party in interest for the following reasons. First, in the ICA's view, "the insured has a continuing personal interest in causing the insurer to pay the insured's provider." According to the ICA, "the [peer review organization's] decision that the past treatment and/or services were inappropriate and unreasonable may not be the end of the insured's relationship with the provider. The insured may want the provider to continue treatment and/or services to the insured and to be motivated to provide the best treatment and/or services possible." The ICA further stated that "nonpayment to the provider of all or some of the provider's bill for past treatment and/or services would tend to inhibit the insured's realization of these legitimate decisions."

The concern outlined by the ICA that "the no-fault insured has a continuing personal interest in causing the insurer to pay the insured's provider" simply does not provide an adequate basis to confer "real party in interest" status on a no-fault insured who has received unreimbursed medical services. Although an insured may have a "personal interest" in payment of past medical services to his or her provider, the law does not view this interest as a legally cognizable interest. As discussed above, the no-fault laws completely insulate an insured from the billing/payment process. *Therefore, the altruistic concern for the preservation of the integrity of the therapeutic relationship between physician and patient does not supply the statutory basis to permit an insured to assist*

*an unpaid provider in collecting payment for medical expenses.*

*Id.* at 50, 968 P.2d at 652 (citations and brackets in original omitted) (emphasis added).

The ICA's second reason for concluding that Wilson was a real party in interest was that the peer review organization's denial of no-fault benefits may jeopardize an insured's right to assert tort liability, which is contingent on the insured reaching the statutory medical-rehabilitative expense threshold for suing in tort. *Id.* The supreme court concluded that while the need to satisfy the tort threshold would make an insured a real party in interest, Wilson had not claimed that her suit was necessary to reach the tort threshold. *Id.* The supreme court stated:

> In this case, Wilson's admitted purpose in filing her lawsuit was to recover no-fault benefits against [the insurer] on behalf of Dr. Robinson. Wilson has not claimed that she filed suit to preserve a potential tort claim. Accordingly, [ ] although the ICA's tort threshold rationale may provide the basis for a claim that another plaintiff may pursue, it is not a claim articulated by Wilson and cannot accord her the status of a real part[y] in interest. Because Wilson is not a real part in interest with respect to the claim she has advanced in this case, we thus reject the ICA's reasons in support of its conclusion.

*Id.* at 50–51, 968 P.2d at 652–53.

In this case, there is no dispute that Kim exceeded the tort threshold without considering the amounts billed by the Health Center that Liberty Mutual denied. Thus, Kim cannot rely upon the "tort threshold rationale" to establish her status as a real party in interest.

**B.**

After *Wilson v. AIG* was decided, the 2006 Legislature amended the no-fault law by enacting Act 198. The conference commit tee report accompanying Act 198 reveals that Act 198 was enacted to address two Hawai'i Supreme Court decisions, *Wilson v. AIG* and *Orthopedic Associates of Hawaii, Inc. v. Hawaiian Ins. & Guar. Co. Ltd.,* 109 Hawai'i 185, 124 P.3d 930 (2005).[7] In the conference commit tee report accompanying Act 198, the conference committee discussed *Wilson v. AIG* and expressed its clear intent to overrule *Wilson v. AIG.* The conference commit tee report stated in relevant part as follows:

> Your Committee on Conference believes that changes to the law are necessary to streamline the onerous process required by the Supreme Court [ (referring to *Orthopedic Assoc.)* ] and to clarify the legislative intent that treatment denials and payment disputes should be treated differently. Your Committee on Conference further believes that an insured or claimant should not be denied the opportunity to contest an insurer's decision to dispute a provider's charges. In *Wilson v. AIG Hawai'i Ins. Co.,* 89 Hawai'i 45 [968 P.2d 647] (1998), the Court held that the statutory scheme insulating claimants from personal liability for unpaid portions of medical bills reflected a legislative intent not to permit insureds to contest payment disputes, notwithstanding statutory language permitting any insured to contest such disputes. The law should provide a claimant with the ability to submit a dispute to the commission, arbitration, or a court, reflecting the legislative intent to allow claimants to contest fee disputes. Patients have a direct interest in proper

7. *Orthopedic Assoc.* construed a provision of the no-fault law, HRS § 431:10C–304(3)(B) (1993), as requiring insurers to issue formal denial notices even where the insurer did not dispute the treatment provided but only the billing codes or billing amounts. *Orthopedic Assoc.,* 109 Hawai'i at 195–96, 124 P.3d at 940–41. The conference committee report accompanying Act 198 stated that the conference committee found

> that, as a result of the Court's ruling in *Orthopedic Assoc. of Hawaii,* insurers are required to issue denial notices in the thousands, in tripli-

cate, each month for billing discrepancies, even though the amount disputed may be as little as one dollar. The issuance of these denial notices has not only significantly increased the amount of paperwork required of insurers, but has also created a great deal of stress and concern for the insureds who are confused as to whether and why their treatments have been denied.

Conf. Comm. Rep. No. 128, 2006 Senate Journal, at 966.

payment to their doctors to maintain appropriate treatment and patient-doctor relationships. *Your Committee on Conference finds that it is necessary to permit claimants to contest fee disputes to maintain the pool of doctors willing to treat accident patients, as many doctors have stopped accepting accident patients because of the Wilson [v. AIG] case, making needed medical treatment unavailable to many patients.* Accordingly, claimants, insurers, and providers should be statutorily afforded real party in interest status and standing to contest all fee disputes.

Conf. Comm. Rep. No. 128, 2006 Senate Journal, at 966 (emphasis added).

Act 198 amended HRS § 431:10C–308.5(e) as follows, with the deletions shown in brackets and the new material underlined:

(e) In the event of a dispute between the provider and the insurer over the amount of a charge or the correct fee or procedure code to be used under the workers' compensation supplemental medical fee schedule, the insurer shall:

(1) Pay all undisputed charges within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued and demand for payment thereof; and

(2) Negotiate in good faith with the provider on the disputed charges for a period up to sixty days after the insurer has received reasonable proof of the fact and amount of benefits accrued and demand for payment thereof.

If the provider and the insurer are unable to resolve the dispute[,] after a period of sixty days pursuant to paragraph (2), the provider, insurer, or claimant may submit the dispute to the commissioner, arbitration, or court of competent jurisdiction. The parties shall include documentation of the efforts of the insurer and the provider to reach a negotiated resolution of the dispute. This section shall not be subject to the requirements of section 431:10C–304(3) with respect to all disputes about the amount of a charge or the correct fee and procedure code to be used under the workers' compensation supplemental medical fee schedule. An insurer who disputes the amount of a charge or the correct fee or procedure code under this section shall not be deemed to have denied a claim for benefits under section 431:10C–304(3); provided that the insurer shall pay what the insurer believes is the amount owed and shall furnish a written explanation of any adjustments to the provider and to the claimant at no charge, if requested. The provider, claimant, or insurer may submit any dispute involving the amount of a charge or the correct fee or procedure code to the commissioner, to arbitration, or to a court of competent jurisdiction.

2006 Haw. Sess. Laws Act 198, § 2 at 840–41.

C.

 The pivotal issue in this appeal is whether Act 198 and its legislative history have undermined *Wilson v. AIG*'s real-party-in-interest analysis. In concluding that Act 198 overruled *Wilson v. AIG*, the circuit court stated:

In the end, it comes down to whether Act 198 legislatively overrules *Wilson [v. AIG]*. And I believe it does, by its own legislative history. *Wilson [v. AIG]* itself was also a case in which the insurance company had completely denied coverage of the appellant's MRI [8]. Given that the Legislature was expressly attempting to modify the holding in *Wilson [v. AIG]*, it seems unlikely that they would have intended this amendment to apply to a fee dispute and not to a complete denial of coverage. Indeed, section 431:10C–212 has long provided that a claimant may seek review with the Commissioner where he or she, quote, objects to the denial of benefits by an insurer, end quote.

The holding in *Wilson [v. AIG]* was based on the Court's determination that, quote: The no fault statutory scheme strongly suggests that the provider, not the insured, is entitled to pursue payment

8. As previously noted, *Wilson v. AIG* actually involved the insurer's denial of payment of a physician's bill for surgery performed on the insured to repair a herniated disc.

from the insurer for the cost of unreimbursed medical services, end quote.

The Legislature's recent amendment and the accompanying committee report make it clear that the *Wilson [v. AIG]* Court's analysis was contrary to legislative intent. The committee report also makes it clear that in the view of the Legislature a claimant does have a direct legally cognizable interest in ensuring proper payment to their doctors, quote: To maintain appropriate treatment and doctor/patient relationships. End quote.

The Court is essentially asked to continue to rely on *Wilson [v. AIG]* even in the face of a statutory amendment which was expressly intended to in part overrule *Wilson [v. AIG]*. And I don't believe the Court should therefore continue to rely on *Wilson [v. AIG]*, especially since the statutory amendment changes the statutory scheme on that essential issue and therefore leads the Court to believe that there is not only standing but real party in interest as a matter of new law.

(Underscoring added.)

## D.

We conclude that Act 198, and especially its accompanying legislative history, have undermined basic assumptions on which *Wilson v. AIG*'s real-party-in-interest analysis was based. Act 198 and its legislative history have clarified the Legislature's intent and its view of the substantive interests that insured claimants have in seeking recovery of amounts billed by their medical provider for treatments rendered which the insurer refuses to pay. Based on the clarification provided by Act 198 and its legislative history, we conclude that Kim qualifies as a real party in interest in her administrative action against Liberty Mutual.

### 1.

■ The Hawai'i Legislature has the power to establish and enact substantive law. *See* Haw. Const. Art. III, § 1 ("The legislative power of the State shall be vested in a legislature.... Such power shall extend to all rightful subjects of legislation not inconsistent with this constitution or the Constitu-

tion of the United States."); *Bissen v. Fujii*, 51 Haw. 636, 638, 466 P.2d 429, 431 (1970) (stating that "[t]he legislative power has been defined as the power to enact laws and to declare what the law shall be" and that "once the legislature has acted, it is not for [the courts] to evaluate the wisdom of legislative action"); *State v. Johnson*, 145 Idaho 970, 188 P.3d 912, 916 (2008) ("Legislation is a constitutional exercise of the Legislature's power to enact substantive law and that legislation is to be given due deference and respect." (internal quotation marks, brackets, and citation omitted)); *see also Ross v. Stouffer Hotel Co.*, 76 Hawai'i 454, 467, 879 P.2d 1037, 1050 (1994) (Klein, J., concurring and dissenting) (stating that " '[t]he Court's function in the application and interpretation of ... laws must be carefully limited to avoid encroaching on the power of [the legislature] to determine policies and make laws to carry them out.' " (citation omitted; brackets in original)).

The Hawai'i Supreme Court has relied upon the Legislature's clear expression of its intent in a subsequent enactment to modify the court's original view of the Legislature's intent. *State v. Wilson*, 75 Haw. 68, 77–78, 856 P.2d 1240, 1245–46 (1993) (supreme court changed from its original view that a first driving-under-the-influence-of-intoxicating-liquor offense was a constitutionally serious offense entitling the defendant to a jury trial to concluding that such offense was a constitutionally petty offense, to which no right to jury trial attached, based on the Legislature's clear expression in a subsequent enactment that the court's original view was wrong); *cf. Mollena v. Fireman's Fund Ins. Co. of Hawaii, Inc.*, 72 Haw. 314, 324–25, 816 P.2d 968, 973 (1991) (relying on subsequent legislative amendment to clarify Legislature's original intent regarding statute's meaning).

*Wilson v. AIG*'s real-party-in-interest analysis was premised in significant part on the supreme court's view, based on inferences it drew from the statutory scheme, that the Legislature did not intend that the insured claimant be allowed to pursue payment from the insurer for amounts billed by a medical provider for services rendered. *See Wilson v. AIG*, 89 Hawai'i at 49–50, 968 P.2d at 651–

52. The supreme court in *Wilson v. AIG* stated that "[t]he no-fault statutory scheme strongly suggests that the provider, not the insured, is entitled to pursue payment from the insurer for the cost of unreimbursed medical services to the insured." *Id.* at 50, 968 P.2d at 652. However, in enacting Act 198, the Legislature clearly expressed its view that the *Wilson v. AIG* court's interpretation of the Legislature's intent was wrong and that the Legislature intended to allow insured claimants to contest this type of fee dispute. *See* Conf. Comm. Rep. No. 128, 2006 Senate Journal, at 966.

*Wilson v. AIG*'s real-party-in-interest analysis was also premised on its view of the relative insignificance of the insured's substantive interest in causing the insurer to pay the insured's medical provider for treatments provided. The *Wilson v. AIG* court described that interest as an "altruistic concern." *Wilson v. AIG*, 89 Hawai'i at 50, 968 P.2d at 652. However, in enacting Act 198, the Legislature strongly expressed its view that the insured's ability to contest the insurer's refusal to pay medical bills submitted by the insured's medical provider was crucial to the insured's substantive interests and not simply an altruistic concern. The Legislature found that the ability of an insured claimant to contest such fee disputes was necessary to ensure that insured claimants would have doctors willing to treat them. The conference commit tee report stated: "Your Commit tee on Conference finds that it is necessary to permit claimants to contest fee disputes to maintain the pool of doctors willing to treat accident patients, as many doctors have stopped accepting accident patients because of the *Wilson [v. AIG]* case, making needed medical treatment unavailable to many patients." Conf. Comm. Rep. No. 128, 2006 Senate Journal, at 966.

We conclude that because Act 198 and its legislative history have undermined *Wilson v. AIG*'s real-party-in-interest analysis, *Wilson v. AIG* does not control the decision in this case. Based on the Legislature's clear expression of its intent and its clarification of the nature of an insured claimant's interest in seeking recovery of amounts billed by his or her medical provider, we conclude that

Kim is a real party in interest and is entitled to pursue her administrative action against Liberty Mutual to recover fees billed by the Health Center.

### 2.

Liberty Mutual contends that the amendments to HRS § 431:10C–308.5(e) effected by Act 198 do not apply to Kim's situation. Liberty Mutual distinguishes between situations in which (1) an insurer denies all payment for medical treatment rendered because it contends that the treatment was not reasonable or appropriate (Kim's situation); and (2) an insurer agrees that the medical treatment was reasonable and appropriate and only disputes the amount of the charge or whether the correct fee or procedural code was used. Liberty Mutual argues that Act 198 only applies and affords real-party-in-interest status to an insured claimant raising a fee dispute in the latter situation.

Kim, on the other hand, argues that the legislative history of Act 198 "evinces the Legislature's grave concerns with *Wilson [v. AIG]*, and its impact on an insured's ability to contest the [insurer's] denial of benefits." *Wilson v. AIG* involved a situation like Kim's in which the insurer denied all payment based on a determination that the treatment was not reasonable or appropriate. Kim in effect argues that given the Legislature's expressed concerns with *Wilson v. AIG* and the Legislature's expressed intent to allow insured claimants to contest fee disputes to ensure the availability of doctors for treatment of accident patients, the Legislature must have intended Act 198 to cover Kim's situation in which the insurer denies all payment for treatments rendered.

In deciding this appeal, we need not resolve the dispute between Liberty Mutual and Kim over the scope of the fee disputes encompassed by Act 198's amendment to HRS § 431:10C–308.5(e). For purposes of our decision, what matters is the Legislature's expression of its intent and its clarification of the insured claimant's interest in contesting fee disputes that are embodied in the Legislature's enactment in Act 198, and not the precise reach of Act 198. Through Act 198 and its accompanying legislative his-

tory, the Legislature has clearly spoken in terms that have undermined *Wilson v. AIG*'s real-party-in-interest analysis. Accordingly, *Wilson v. AIG* cannot be relied upon to preclude Kim from pursuing her claim before the Insurance Commissioner.

## IV.

For the foregoing reasons, we affirm the portion of the circuit court's Judgment that: (1) ruled that Kim has standing and is a real party in interest who is entitled to challenge Liberty Mutual's denial of personal injury protection benefits, namely, Liberty Mutual's refusal to pay the billing statement submitted by the Health Center for acupuncture treatments provided to Kim; and (2) remanded the case to the Insurance Commissioner. We vacate the portion of the circuit court's Judgment that ruled that Liberty Mutual was required to obtain Kim's mutual consent in order to submit Kim's medical records to a doctor for a records review. We remand the case to the circuit court for further proceedings consistent with this opinion.